UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHERRY L.,

                Plaintiff,

v.                                                    CASE # 20-cv-01432

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

Law Offices of Kenneth Hiller                KENNETH R. HILLER, ESQ.
  Counsel for Plaintiff                          JEANNE E. MURRAY, ESQ.
6000 North Bailey Ave
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.            JUNE LEE BYUN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.      **RELEVANT BACKGROUND**

    A.      **Factual Background**

Plaintiff was born on November 28, 1986 and has at least a high school education. (Tr. 248, 1789). Generally, plaintiff alleged disability due to rheumatoid arthritis, bipolar disorder, paranoid schizophrenia, anxiety, posttraumatic stress disorder (PTSD), and breathing trouble. (Tr. 484). Her alleged onset date of disability is January 1, 2010 and her date last insured was September 30, 2015. (Tr. 480).

    B.      **Procedural History**

On September 3, 2013, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 436-443). Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On September 6, 2016, plaintiff appeared before ALJ William Weir. (Tr. 37-70). On January 6, 2017, ALJ Weir issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 7-36). On December 15, 2017, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). Thereafter, plaintiff timely sought judicial review in this Court. On April 3, 2019, this Court remanded the case for further proceedings. (Tr. 1882). On September 4, 2019, the AC issued a remand order pursuant to this Court's order. (Tr. 1883-88). A second hearing was held on May 22, 2020, via telephone due to the COVID-19 pandemic, before ALJ Weir, who issued another unfavorable decision on April 8, 2020, finding plaintiff not disabled. (Tr. 1774-1800, 1821-45). Plaintiff directly appealed to this Court.

    **C.**    **The ALJ's Decision**

Generally, in his 2020 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has rheumatoid arthritis, chronic infection, lupus, bipolar disorder, and a polysubstance use disorder, each of which constitutes a severe impairment (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant's impairments, including the substance use disorder, meet section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)5).

5. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

6. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

7. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can occasionally use her hands bilaterally for handling, fingering, and feeling. She should be around extremes of pulmonary irritants such as dust, fumes, and gases. She should not be in an environment not controlled for temperature or humidity.

8. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

9. The claimant was born on November 28, 1986 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

10. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11. Transferability of job skills is not an issue in this case because the clamant does not have past relevant work (20 CFR 404.1568 and 416.968).

12. If the claimant stopped the substance use, considering the claimant's age, education, work experience and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

13. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 1774-90).

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes four arguments in support of her motion for judgment on the pleadings. First, plaintiff argues the June 2020 hearing transcript is incomplete as to plaintiff's testimony. Second, plaintiff asserts the ALJ relied on a stale opinion from Dr. Miller and rejected other opinion evidence, therefore relying on his own lay opinion. Third, plaintiff argues the ALJ failed to discuss or assign weight to the 2015 opinion from nurse practitioner (NP) Schieppati. Lastly, plaintiff alleges the ALJ based the drug use materiality finding and severity finding for her mental health impairments on his own lay opinion, not substantial evidence. (Dkt. No. 12 at 1 [Pl.'s Mem. of Law]).

### B.     Defendant's Arguments

Defendant replied to each of plaintiff's arguments. Defendant maintains the transcript of the administrative hearing is adequate for review and does not warrant remand. (Dkt. No. 15 at 13 [Def's Mem. of Law]). Second, defendant asserts the ALJ's evaluation of the medical opinions of record is supported by substantial evidence. (*Id*. at 17). Third, defendant argues it was harmless

error to not assign weight to the statement of the nurse practitioner. (*Id*. at 23). Lastly, defendant argues the ALJ properly considered plaintiff's mental impairments and substantial evidence supports his finding that substance abuse was a factor material to the determination of disability. (*Id*. at 26).

### III.   RELEVANT LEGAL STANDARD

#### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

When there is medical evidence of a plaintiff's drug or alcohol abuse, the "disability" inquiry does not end with the five-step analysis. *See* 20 C.F.R. § 416.935(a). The ALJ must

determine whether the plaintiff would still be "disabled if [she] stopped using drugs or alcohol." *Id*. § 416.935(b)(1); *see also id*. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [the plaintiff's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."). Plaintiff bears the burden of proving DAA immateriality. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

IV.   ANALYSIS

   A.   Transcript

Plaintiff first asserts remand is necessary because the June 2020 hearing transcript is incomplete. (Dkt. No. 12 at 23). Due to the extraordinary circumstances presented by the global pandemic, all participants attended the hearing by telephone, which was agreed to by plaintiff's representative. (Tr. 1777). Indeed, the transcript denotes testimony as "inaudible" in at least 50 spots but the majority of those classifications were clarified by surrounding testimony or re-asking of questions. Plaintiff did not identify any areas of "inaudible" testimony that were consequential or critical to the ALJ's decision. *See Williams v. Barnhart*, 289 F.3d 556, 558 (2d Cir. 2002) (finding no indication that missing portion of transcript would bolster appellant's arguments, and small gaps in transcript did not "interfere with comprehension of the testimony to an extent that would hinder fair review") (internal citation omitted); *see also Mireles ex rel. S.M.M. v. Comm'r of Soc. Sec.*, 608 F. App'x 397, 399 (6th Cir. 2015) (remand not warranted for preparation of a transcript filling in "inaudible" portions of testimony from medical expert, where expert's opinion was apparent from the transcribed portions), *citing* SSA Hearings, Appeals and Litigation Law Manual (HALLEX) I–4–1–53 (1993), 1993 WL 643630 (providing that "If the transcript contains "inaudible" or "unintelligible" portions (in excess of three per page)," an audit of the hearing

recording may be warranted before the hearing transcript is placed in the certified administrative record) (emphasis added).

Although plaintiff concedes that many portions of the testimony were remedied by clarification or re-asking of questions, she simultaneously argues the inaudible portions pertained to her subjective complaints and prevent meaningful review. (Dkt. No. 12 at 23-24). However, the ALJ thoroughly discussed plaintiff's subjective allegations regarding her bilateral hand contractures, including allegations of recurrent flares of lupus lasting for days at a time and symptoms including skin ulcers and swelling. (Tr. 1786). After a review of all evidence, including testimony of subjective complaints, the ALJ properly concluded that based on the conservative treatment, stable objective clinical findings showing adequate strength and mobility, and non-compliance with treatment and medication, that she retained adequate strength and mobility in her hands to sustain occasional bilateral handling, fingering, and feeling. (Tr. 1786, *citing* Tr. 593, 638-39). As to plaintiff's substance abuse and mental limitations, the ALJ discussed that the record showed minimal treatment for mental health issues, which were notably secondary to cocaine use (Tr. 1839, *citing* Tr. 614-16, 756, 759) or exacerbated when she was off her medication and on crack cocaine for at least two weeks. (Tr 625). The record also showed plaintiff's repeated non-compliance with mental health medications. (*see e.gs.* Tr. 793, 1701, 1726, 2102). Plaintiff has not alleged any medical evidence was missing from the record and has not identified how she was negatively impacted by the instances of inaudibility that were not already corrected during the hearing.

    B.    **Medical Opinion Evidence**

Plaintiff next asserts the opinion of Dr. Miller was stale and the ALJ improperly relied on it and his own lay opinion in assessing the RFC. (Dkt. No. 12 at 24). Consultative examiner Dr.

Miller examined plaintiff on July 25, 2012. (Tr. 591-95). Dr. Miller diagnosed plaintiff with chronic low back pain, sciatica and opined that plaintiff had a mild limitation for heavy lifting, bending, and carrying. (Tr. 594). ALJ Weir accorded significant weight to the opinion, finding it consistent with the contemporary treatment record. (1788-89). Plaintiff argues there was subsequent physical deterioration, particularly in her hands, which rendered the opinion stale. (Dkt. No. 12 at 26).

Notably, a medical opinion is not rendered obsolete merely due to the passage of time. *See, e.g.*, *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 910 (W.D.N.Y. 2018) ("However, a medical opinion is not stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole."). Further, while medical opinions based on an incomplete medical record may not be substantial evidence, opinions supported by substantially similar findings in treatment notes may constitute substantial evidence. *Camille v. Colvin,* No. 14–CV–6155 EAW, 104 F.Supp.3d 329, 343–44, 2015 WL 2381030, at *13 (W.D.N.Y. May 19, 2015).

ALJ Weir thoroughly discussed the subsequent medical evidence, such as records that showed some use of the hands. (Tr. 16-26). *See, e.g., Bamberg v. Comm'r of Soc. Sec.*, No. 18-CV-00337-DB, 2019 WL 5618418, at *5 (W.D.N.Y. Oct. 31, 2019) ("In this case, the ALJ discussed the subsequent medical evidence in detail, and there is no indication that any later-received evidence 'raise[s] doubts as to the reliability of [the consultative examining physician's] opinion.'") (quoting *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2012)) (internal record citation omitted). Treatment notes after Dr. Miller's opinion showed that while plaintiff had some decreased hand and finger ranges of motion and stiffness, she was otherwise neurologically intact, had normal strength, and normal sensation in the upper extremities without edema or swelling.

(Tr. 639, 642, 646, 649, 682, 806, 1685, 1717). The ALJ noted that at an April 2018 appointment with rheumatologist Dr. Mallela, despite plaintiff's complaint of an inability to open her hands, exam findings showed "flexion of the left hand", crepitus of the knees and swelling of the wrists, but no observed significant weakness or loss of function with the hands. (Tr. 1787 *citing* Tr. 2093-04). Dr. Mallela also noted that plaintiff had not followed up despite multiple referrals. (Tr. 1717).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *See, e.g., Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute such substantial evidence."). Here, ALJ Weir did not solely rely on the findings of Dr. Miller, as he limited plaintiff to occasional bilateral handling, fingering, and feeling in the RFC. (Tr. 1785-86). The ALJ's finding of greater limitations than Dr. Miller opined is permitted and reflective of consideration of substantial record evidence, including plaintiff's activities of daily living, medical records, and opinion evidence. *Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'"). The ALJ had both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence to make an RFC finding that is consistent with the record as a whole. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); see *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). Here, the ALJ appropriately

considered Dr. Miller's opinion in the context of the overall record, including the evidence that was generated and submitted after the consultative examination.

Indeed, although there were subsequent medical statements from Drs. Mallela and Liu, it was within the ALJ's discretion to resolve evidentiary conflicts in the record, including between and amongst the medical opinions. *See, e.g., Heaman v. Berryhill,* 65 F. App'x 498, 500 (2d Cir. 2019) ("While the ALJ is not 'permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion,' *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000), the ALJ may 'choose between properly submitted medical opinions,' *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), including the report of a consultative physician, *see Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983).") As for Dr. Mallela's opinion, the ALJ found it inconsistent with other significant record evidence, indicating that while plaintiff had some hand problems, orthopedic specialist Dr. John Callahan nevertheless noted that her hand use was not absent. (Tr. 1788, *citing* Tr. 2417-19). The ALJ also recognized that plaintiff's treatment regimen remained substantially similar throughout time, with only dose changes of medication. (Tr. 1787). The ALJ lastly noted that plaintiff also had notable non-compliance throughout her treatment, including non-compliance with medication and attendance at appointments. (Tr. 1788 citing Tr. 1677, 1681, 1703, 1717, 1729, 2409, 2458, 2500, 2523, 2619, 2627-28, 2661, 2709, 2713, 2744).

The ALJ also found Dr. Liu's opinion to be inconsistent with other record evidence. The records during the entire period at issue show sporadic treatment and non-compliance, but when compliant with medication she had reported improvement. (*See e.gs.* Tr. 660, 776, 805, 829, 1658, 1670, 1695, 1699, 1734, 2068-69, 2713, 2843). ALJ Weir found that Dr. Liu's opinion was inconsistent with treatment notes that Plaintiff had no more than moderate difficulties with her hands, intact strength throughout all extremities, intact motor and sensation, normal ranges of

motion, and was neurologically intact. (Tr. 639, 642, 646, 649, 682, 806, 1685, 1717). Specifically, regarding her hands, treatment records showed increase in joint swelling and skin lesions when using cocaine or when off her medication. (Tr. 639, 647). Moreover, while Dr. Liu noted that "[Plaintiff] keeps all the fingers in a fixed position at 45 degrees" (Tr. 1788-1789, *citing* Tr. 2009), plaintiff also admitted at the examination to smoking cigarettes, drinking alcohol, and using crack. (Tr. 2007). Plaintiff reported to Dr. Liu she had the ability to cook, do laundry, shower, bathe, and dress herself. (Tr. 2007). Dr. Liu further noted that plaintiff needed no help changing for the exam or getting on or off the exam table. (Tr. 2008).

Plaintiff's argument that additional medical opinions were necessary is unavailing. (Dkt. No. 12 at 29). Courts have held that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir.1999) (quoting *Perez v. Chater*, 77 F.3d 41 at 48). The medical records from June 2012 through March 2020 consistently showed normal motor strength throughout and normal neurological findings. (Tr. 1685, 1717, 1756, 1772, 20]69, 2504, 2578, 2612, 2747, 2778, 2789, 2832). Plaintiff had no atrophy, abnormal movements, flaccidity, cogwheeling or spasticity in her muscle tone. (Tr. 1685). Additionally, in 2017, she exhibited appropriate strength and tone bilaterally and could move all extremities without difficulty. (Tr. 2616, 2651). Treatment records from December 2019 through February 2020 focused on unrelated medication issues, including cough and dental problems, without any complaints of her alleged hand contractures. (Tr. 2427, 2442). Plaintiff has not alleged any medical records are missing. The ALJ properly considered the medical and non-medical evidence in the record, including the examination findings, medical opinions, and activities of daily living to properly assess a RFC for a range of light work with

occasional handling, fingering, and feeling, that is supported by substantial evidence. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)

### C. NP Schieppati Opinion

Plaintiff argues that the ALJ did not mention the January 2015 opinion of Sheila Schieppati, NP from Mercy Comprehensive Care, thereby warranting remand. (Dkt. No. 12 at 29-31, *citing* Tr. 877-78). To be sure, the regulations state the ALJ "will evaluate every medical opinion [he] receive[s]." 20 C.F.R. § 416.927(c). However, failure to discuss and/or weigh a medical opinion is not per se remandable error but may be found harmless error. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) ("Although the ALJ did not describe in detail her rationale, we can infer from the decision that she attributed 'great weight' to the opinion because she found it most consistent with the record as a whole."); *see Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's decision."); *see also Brault v. SSA, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (the court does "not require that [an] ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"). Here, any error to specifically address and weigh NP Schieppati's opinion was harmless error.

First, a nurse practitioner is a non-acceptable medical source, and not subject to the same deference as an acceptable, treating source. Notably, she had only examined the plaintiff on two occasions. (Tr. 844-45, 848-49). However, her opinion is very similar to the opinions of Drs. Liu and Malella, which were considered by the ALJ. (Tr. 1788). The ALJ explicitly discussed that he

13

rejected the very limiting opinions of Drs. Liu and Malella because they were inconsistent with their own treatment notes, such as evidence showing no more than moderate difficulties with her hands, and conservative treatment for hand inflammation throughout the period. (Tr. 1788-89). The omission of discussing NP Schieppati's is harmless because it is similar to the other opinions which were already rejected and therefore would not have changed the outcome. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand when opinion of treating physician incorrectly discounted as incomplete and unsigned because agency reconsideration unnecessary where "application of the correct legal principles to the record could lead [only to the same] conclusion"). Furthermore, the severe limitations opined by NP Schieppati are also inconsistent with her own examination findings, as well as other treatment records which generally showed that plaintiff had intact strength, motor and sensation, normal range of motion, was neurologically intact, and had no clubbing or edema in her extremities. (Tr. 639, 642, 646, 648-49, 666, 673, 682, 691-92, 806, 860, 1661, 1673, 1681, 1685, 1688, 1692, 1697, 1717).

      **D.**      **DAA Materiality Finding**

Plaintiff argues the ALJ's materiality finding is unsupported and he improperly evaluated plaintiff's mental impairments. (Dkt. No. 12 at 31). When there is medical evidence of an applicant's drug or alcohol abuse, the disability inquiry does not end with the five-step analysis. *See* 20 C.F.R. § 416.935(a); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118 (2d Cir. 2012)). The materiality finding requires the ALJ to evaluate disability a second time to determine whether the individual would still be disabled if he or she stopped using drugs or alcohol. *Cordero v. Astrue*, 574 F. Supp. 2d 373, 378 (S.D.N.Y. 2008) (citing 20 C.F.R. § 416.935(b)(2)); *see also* 20 C.F.R. § 404.1535(b)(2). In order to find a claimant not disabled, SSR 13-2p requires that an ALJ have

positive evidence showing that plaintiff's severe mental impairment would improve to the point of nondisability in the absence of her DAA.

Here, ALJ Weir found plaintiff's substance use material concluding that her mental impairments met listings 12.04, but if she stopped using substances, her bipolar disorder would no longer impose more than minimal functional limitations and therefore would no longer be a severe impairment. (Tr. 1783). Contrary to plaintiff's argument, the ALJ parsed out the substance abuse from the mental health limitations by relying on periods of abstinence in supporting his materiality finding. Periods of abstinence can be evidence used to determine if an impairment would improve to the point of nondisability. *See Mullen v. Berryhill*, No. 16-CV-476-FPG, 2017 WL 2728583, at *4 (W.D.N.Y. June 26, 2017), citing SSR 13-2p. The regulations describe a "period of abstinence" as a period of time in which "a claimant who has, or had, been dependent upon or abusing drugs or alcohol and stopped their use." SSR 13- 2p, fn. 17.

The ALJ acknowledged plaintiff's testimony regarding her substance use, noting that she drank alcohol two weeks prior to the hearing and most recently smoked crack cocaine one month prior to the hearing, and approximately three times within the previous 12 months. (Tr. 1781, *citing* Tr. 1835-36). The ALJ also discussed that during periods plaintiff acknowledged crack cocaine use, doctors noted that they could not rule out substance abuse as the cause of her symptoms, including depression, auditory hallucinations, limited insight, and judgment. (Tr. 1781-82, *see e.gs.* Tr. 584-5, 614, 616, 619, 621, 642, 702, 748, 756, 790, 793, 812, 817, 947, 1701, 1703, 2153, 2205, 2369, 2725, 2732). For example, during an emergency room visit in September 2017, plaintiff was uncooperative, notably hiding under the blanket, and was not responsive to stimuli; but toxicology was positive for cocaine. (Tr. 2755). However, during the relevant period plaintiff had two incarcerations which were considered a period of sobriety. (Tr. 883-1654, 2100-2404).

The ALJ noted that during these incarcerations plaintiff was responsive to mental health treatment, and mental status examination findings were largely unremarkable with plaintiff exhibiting intact memory and coherent and logical thought processes, with only mildly impaired insight and judgment. (Tr. 1783-84, *referring to* Tr. 888, 905, 946-7, 960, 1109-10, 1369, 1385, 1532, 1634, 2102, 2107). ALJ Weir also discussed findings that mental health symptoms were better when plaintiff was compliant with her prescribed medications. (Tr. 1781, *citing* Tr. 1385, 2188).

The ALJ's reliance on evidence that plaintiff experienced exacerbated psychiatric symptoms during times she was abusing drugs and alcohol, but that she improved with treatment and sobriety, was a proper basis for determining the materiality of drug and alcohol abuse. (Tr. 1783-84). *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118 at 123; *Guilbe v. Colvin*, 2015 WL 1499473, at *11. Courts have ruled that improvement with treatment and sobriety is evidence that supports a finding of materiality. *Smith v. Comm'r of Soc. Sec.* 731 Fed. Appx. 28, 30 (2d. Cir. 2018) (materiality finding proper where the claimant's medical records reflected that her depression, anxiety and bipolar disorder symptoms were well-managed through medications and that her functioning improved when she underwent substance abuse treatment.

It is the claimant who bears the burden of proving that her drug addiction is not a material factor. *See Smith*, 731 F. App'x at 30; *Cage*, 692 F.3d at 123-25; 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935. It is also the claimant who has the burden of proving that her mental impairments met or equaled a listing, and that she had additional RFC limitations that were greater than those found by the ALJ. *See Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them); *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."). A review of the ALJ's decision and

the record shows that the ALJ appropriately considered the record evidence, and plaintiff has not demonstrated, as was her burden, that substance abuse was not a material factor. ALJ Weir properly considered the evidence in the record relating to plaintiff's mental impairments, and substantial evidence, including the treatment records and her other activities of daily living, supported the ALJ's finding that substance abuse was a factor material to the determination of disability.

The Second Circuit has rejected plaintiff's additional argument that a medical opinion is required for a materiality finding and held that an RFC may be supported by substantial evidence, even if it does not correspond to any particular medical opinion. *See Cage*, 692 F. 3d at 126-27 (recognizing that an ALJ may find that substance abuse is a contributing factor material to the determination of disability, even where the record does not contain a medical opinion addressing the issue); *Wettlaufer v. Colvin*, 203 F.Supp.3d 266, 277 (W.D.N.Y. 2016) (rejecting plaintiff's argument that ALJ could not find her alcohol abuse was a contributing factor in the absence of any medical opinion addressing the issue); Social Security Ruling (SSR) 13-2p, 2013 WL 621536, at *12 (providing that, in considering the documentation of a period of abstinence, an ALJ "may draw inferences" from the information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated). As discussed above, it is the ALJ, not a medical source, that is responsible for assessing an RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see id*. at §§ 404.1527(d)(2), 416.927(d)(2).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is

    **<u>GRANTED</u>**.

Dated: June 16, 2022                                    <u>*J. Gregory Wehrman*</u>
Rochester, New York                             HON. J. Gregory Wehrman
                                                           United States Magistrate Judge